UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ARIANA BELFORT LEE,                                NO. _____

                **Plaintiff.**

-   against   -                                                  **COMPLAINT**

**NEW YORK STATE UNIFIED COURT SYSTEM,**
**JOSEPH BACCELLIERI, and ANTHONY MUNG,**

               **Defendants.**
-------------------------------------------------------------------X

Plaintiff Ariana Belfort Lee ("Plaintiff" or "Ms. Lee"), by and through her attorneys, FISHER TAUBENFELD LLP, alleges against Defendants NEW YORK STATE UNIFIED COURT SYSTEM ("UCS"), JOSEPH BACCELLIERI and ANTHONY MUNG ("Individual Defendants") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1. This action arises under Title VII of the Civil Rights Act ("Title VII"), the New York State Human Rights Law ("NYSHRL" or "State Law"), codified in the New York State Executive Law Article 15 §§ 290 *et. Seq.* ("State Law") and the New York City Human Rights Law, Administrative Code of the City of New York § 8-101 *et seq.* ("City Law"). Based on the following acts and/or omissions, Defendants knowingly violated Plaintiff's rights under federal, State, and City law and such actions were committed intentionally and/or willfully with knowledge that Plaintiff would be economically injured:

    a)    Defendants' gender and sexual-orientation based harassment against Plaintiff;

    b)    Defendants' retaliation based on Plaintiff's complaints of harassment.

2. Damages and other legal relief are sought pursuant to Title VII, City Law, and State Law.

1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (original federal question jurisdiction). Supplemental jurisdiction over Plaintiff's State and City Law claims is conferred by 28 U.S.C. § 1367(a), as such claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Plaintiff has satisfied all jurisdictional prerequisites under Title VII. Prior to filing this Complaint, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), and on June 11, 2024 received a Notice of Right to Sue from the EEOC, thereby giving Plaintiff the right to proceed in federal court and conferring jurisdiction upon this Court.

5. Venue is proper in this District because Defendants operate in this District, and acts and/or omissions giving rise to the claims alleged herein took place in this District.

**PARTIES**

*Plaintiff*

6. Plaintiff is a New York resident.

7. Plaintiff was at all times an "employee" within the meaning of federal and State law, protected from retaliation and discrimination on the basis of gender.

8. At all relevant times, Plaintiff was a "person" within the meaning of City Human Rights Law, protected from discrimination and retaliation on the basis of gender and sexuality.

*Defendants*

9. Defendant UCS is the Judicial Branch of New York State Government established pursuant to Article VI of the New York State Constitution.

10. Defendant UCS has at all relevant times been Plaintiff's employer.

11. The Individual Defendants had the authority to alter the terms and conditions of Plaintiff's employment.

12. At all relevant times hereto, Individual Defendants were employed by Defendant UCS in supervisory positions and had authority over the terms and conditions of Plaintiff's employment. Individual Defendants, therefore, were employers under all relevant laws.

13. Individual Defendants were each Plaintiff's commanding officers and had the authority to schedule her shifts, reassign her to different posts and/or work locations, assign her to light duty, discipline her, and/or make recommendations that would be given significant weight in terminating her employment.

14. Individual Defendants aided and abetted the violations by engaging in the acts alleged in this Complaint or facilitating such acts.

## FACTUAL ALLEGATIONS

### *Background regarding Plaintiff's Employment*

15. Plaintiff has worked for Defendants since 2014.

16. Plaintiff began working for the New York State Court Officers Academy ("the Academy") in March 2017.

17. Plaintiff currently holds the rank of Court Officer, although she was previously a sergeant.

18. At all times during Plaintiff's employment, she has been qualified for her position and has carried out her job duties with diligence and care.

### *Harassment and Discrimination*

19. Throughout Plaintiff's employment, she has witnessed and been the victim of sustained harassment and workplace violence from Defendants Chief Joseph Baccellieri and Captain Anthony Mung.

20. Both Baccellieri and Mung made comments such as: "this is why we don't hire women," "this is why we don't want women working here," "we have enough women working here," and "there are too many women working here" in the Academy workplace.

21. In May 2019, after Defendant Baccellieri discovered that Plaintiff was homosexual, his treatment of Plaintiff became more hostile and aggressive.

22. Shortly after Plaintiff came out as gay, Plaintiff heard Defendant Baccellieri commenting throughout the office that "apparently Ariana is gay now."

23. A few months after beginning work at the Academy, Plaintiff was sitting in a peace officer training when Defendant Baccellieri burst into the room, shouted at her: "You! Come here," grabbed her by the arm, and pulled her out of her desk and out of the room.

24. He proceeded to shout in Plaintiff's face about a minor mistake she had made in scheduling a student for a class, pushing her forcefully into her desk chair and demanding that she "fix it, now!"

25. Defendant Baccellieri's behavior was unacceptably violent and extremely disproportionate to the mistake Plaintiff had made.

26. Plaintiff feared for her safety and was embarrassed by his behavior.

27. Court Officer Frank Kennedy and Lieutenant Joel Ramos witnessed the assault.

28. Around the same time, Plaintiff was sitting in a training when Captain Mung entered, screamed at her that she was in the wrong place, and demanded that she come to his office. He then proceeded to shout at Plaintiff and berate her in the presence of multiple witnesses, including Captain Vinetta Anderton, who later approached Plaintiff to tell her that Captain Mung's behavior had been completely inappropriate and that she would speak to him and the Chief about it.

29. Nevertheless, Captain Mung continued to be aggressive and hostile towards

Plaintiff, including an incident when he called Plaintiff into his office alone to accuse her of lying about a discrepancy in a vehicle logbook.

30. On that occasion, Plaintiff made it clear that Captain Mung was making her uncomfortable and that she was afraid of being alone with him.

31. Plaintiff spoke with Defendant Baccellieri about this incident, requesting that she no longer be put in the position of being alone with Captain Mung.

32. Defendant Baccellieri discouraged Plaintiff from contacting the union.

33. In late September 2021, Plaintiff was a few minutes late to work due to taking her children to school. Plaintiff immediately reported to Defendant Baccellieri, told him about her lateness, indicated that it would not happen again, and stated that she would make a plan to avoid it in the future. Defendant Baccellieri indicated that he understood.

34. However, an hour later, while Plaintiff was conducting a test in the gym, Captain Mung came in, pointed at Plaintiff, and demanded that she follow him to the Chief's office immediately.

35. Defendant Baccellieri intentionally used Captain Mung to retrieve Plaintiff even though he knew that she was uncomfortable and intimidated by Captain Mung and even though she had a radio and phone that he could have used to contact her.

36. Individual Defendants then confronted Plaintiff about her occasional lateness and taking sick time.

37. Plaintiff asked whether there was anything they wanted her to sign, but Defendant Baccellieri declined, saying that she was not being given a disciplinary write-up and that they only wanted to bring her lateness to her attention.

38. Later that day, when Plaintiff tried to inform Defendant Baccellieri about her discomfort with Defendant Mung, he responded violently, screaming at Plaintiff to get out of his

5

office.

39. Plaintiff attempted to discuss the incident with Defendant Baccellieri once more that day, stating that she was uncomfortable being called out by Defendant Mung in front of an entire class. Defendant Baccellieri again responded by raising his voice and threatening Plaintiff, saying that he was now going to write a report on her lateness.

40. Defendant Baccellieri later called Plaintiff on her cell phone to inform her that he wanted to speak with her in the morning, at which point Plaintiff contacted her union to request that a representative be present.

41. The next morning, Defendant Baccellieri, Union Delegate Miguel Garcia, Major Andrew Wender and Plaintiff had a meeting.

42. During this meeting, Defendant Baccellieri questioned why Plaintiff had called the union to be present for the meeting.

43. Plaintiff explained that she felt uncomfortable without representation given everything that had transpired.

44. Defendant Baccellieri then cited Plaintiff's absences from work, referring to the time Plaintiff was absent due to her three children being sick with the COVID-19 virus.

45. Plaintiff asked why she was being written up now when the prior day Defendant Baccellieri had told that she would not be. She then stated that she had been abused, harassed, threatened and assaulted. Defendant Baccellieri suddenly got up from his chair and started screaming. The meeting ended with Defendant Baccellieri denying that he assaulted Plaintiff and telling her to "get [your] witnesses."

*Retaliation Against Plaintiff*

46. Later that day, Plaintiff filed a Workplace Violence report with the Inspector General's (IG) office against Defendant Baccellieri.

47. Plaintiff was interviewed regarding this report by Deputy Inspector General Carol Hamm.

48. During the interview, which took place over several hours, Plaintiff recited the details of the assault, the ongoing harassment she had endured due to being a woman, the comments Defendant Baccellieri had made about not wanting women to work there, Defendant Baccellieri's comments about Plaintiff's sexuality, and the fact that his behavior had become worse since he learned she was gay.

49. To date, there has been no conclusion to the IG's investigation and no remedial action has been taken.

50. Defendant Baccellieri continued to intimidate Plaintiff and created an intolerable work environment for her based on her gender and sexuality and in retaliation for her complaints of discrimination.

51. Defendant Baccellieri constantly monitored and restricted Plaintiff's movements, to the point where her coworkers referred to her desk as a "jail cell."

52. Although Defendant Baccellieri's office was in a completely different area and separated from Plaintiff's by a lobby, on a daily basis he walked up to Plaintiff and stood behind her, leering at and intimidating her.

53. The secretary frequently told Plaintiff to "be careful" because Defendant Baccellieri was standing behind her.

54. Defendant Baccellieri also frequently stood near the time clock and watched Plaintiff swipe in in the mornings. He did not do this for other employees.

55. On February 16, 2022, Plaintiff applied for a transfer to the same rank and title, which she was denied. Plaintiff was informed that if she wanted to apply for a transfer, she would be demoted from Sergeant to Court Officer and would receive a reduction in pay.

56. On February 20, 2022, Plaintiff decided that she would apply for a court officer position in order to avoid the harassment and discrimination she was continuing to endure

57. She received no reply to her application.

58. On July 6, 2022, Plaintiff was offered a transfer opportunity to the position of Court Officer but was required to reply within 48 hours. Upon consideration, Plaintiff declined the position due to the fact that the position was a demotion with a reduction in pay.

59. In June, Plaintiff was overlooked for promotion to the rank of Lieutenant, while three male court security training officers received a promotion with an increase in pay.

60. As the most senior court security training officer, Plaintiff was eligible for a promotion to lieutenant.

61. On June 14, 2022, Plaintiff informed Deputy IG Hamm that she had been skipped for a promotion.

62. Deputy IG Hamm never replied.

63. On August 29, 2022, Plaintiff emailed Carolyn Grimaldi of Human Resources and Deputy IG Hamm asking for a status update on the investigation and stating that she had never received a response to her June 14th email.

64. Deputy IG Hamm replied by stating only that the investigation, which had begun almost a year prior, was still ongoing.

65. In September 2022, Plaintiff finally accepted a demotion to Court Officer and transferred to Nassau County. She is now a Court Officer and no longer a Sergeant.

66. Plaintiff was also shut out of participation in the Ceremonial Unit run by the Academy, which she had been part of for eight years. After her transfer, she was removed from the unit, and the Captain of the unit did not reply to an email Plaintiff sent about her removal.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Title VII against UCS)**

67.  Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

68.  Defendant UCS willfully violated federal law when they subjected Plaintiff to discrimination in the terms and conditions of her employment on the basis of her gender by harassing her and tolerating harassment against her.

69.  As a proximate result of Defendant UCS' unlawful acts of discrimination, Plaintiff has endured emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

70.  As a proximate result of Defendant UCS' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

**SECOND CAUSE OF ACTION**
**(Discrimination in Violation of State Law against all Defendants)**

71.  Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

72.  Defendants willfully violated State Law when they subjected Plaintiff to discrimination in the terms and conditions of her employment on the basis of her gender and sexuality by harassing her and tolerating harassment against her.

73.  As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

74.  As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

**THIRD CAUSE OF ACTION**

**(Discrimination in Violation of City Law against all Defendants)**

75. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

76. Defendants willfully violated City Law when they subjected Plaintiff to discrimination in the terms and conditions of her employment on the basis of her gender and sexuality by harassing her and tolerating harassment against her.

77. As a proximate result of Defendants' unlawful acts of discrimination, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

78. As a proximate result of the Defendants' unlawful acts of discrimination, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

## FOURTH CAUSE OF ACTION
**(Retaliation in Violation of Federal Law against Defendant UCS)**

79. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

80. By the acts and practices described above, Defendants retaliated against Plaintiff for reporting and complaining about gender-motivated harassment, in violation of the Title VII.

81. Defendants knew that their actions constituted retaliation and willfully disregarded Plaintiff's statutorily protected rights.

82. As a proximate result of Defendants' unlawful acts, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

83. As a proximate result of the Defendants' unlawful acts, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits. Plaintiff

repeats and realleges the foregoing paragraphs as if fully set forth herein.

## FIFTH CAUSE OF ACTION
**(Retaliation in Violation of State Law against all Defendants)**

84. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

85. By the acts and practices described herein, Defendants intentionally and willfully violated State Law by retaliating against Plaintiff for complaining about gender-motivated harassment.

86. As a proximate result of Defendants' unlawful retaliation, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

87. As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of City Law against all Defendants)

88. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

89. By the acts and practices described herein, Defendants intentionally and willfully violated City Law by retaliating against Plaintiff for complaining about gender-motivated harassment.

90. As a proximate result of Defendants' unlawful retaliation, Plaintiff has endured emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to her reputation.

91. As a proximate result of Defendants' unlawful retaliation, Plaintiff has suffered and continues to suffer substantial losses in past and future earnings and other fringe benefits.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment awarding:

a. back pay, prejudgment interest, front pay, liquidated damages and damages for all employment wage and benefits Plaintiff would have received but for the unlawful acts and practices of Defendants;

b. compensatory damages for emotional distress;

c. reasonable attorneys' fees and costs incurred in this action; and

d. any other relief that the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated:  New York, New York

       September 9, 2024

                                                  Respectfully submitted,

                                                  **FISHER TAUBENFELD LLP**

                                                  _____

                                                  Liane Fisher, Esq.
                                                  *Attorneys for Plaintiff*
                                                  225 Broadway, Suite 1700
                                                  New York, New York 10007
                                                  Phone: (212) 571-0700
                                                  Fax: (212) 505-2001